**38**

Donald L. BLUE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 272–80T.

United States Claims Court.

Dec. 15, 1982.

Donald L. Blue, pro se.

Abraham Gutwein, Washington, D.C., with whom was Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., for defendant. Theodore D. Peyser, Washington, D.C., of counsel.

OPINION

YANNELLO, Judge.

Plaintiff operated Blue's Flying Service, a hangar facility which performed aircraft repair and maintenance at the Torrance Municipal Airport in Torrance, California, and also operated Blue's Exxon, a fuel facility from which plaintiff sold aviation gasoline, from July 1972 to December 1974.

Pursuant to 26 U.S.C. §§ 4041(c)(2), 6601(a), 6651(a)(1) and (2), and 6656(a), plaintiff was assessed a $0.3-cents-per-gallon retailers' excise tax; was also assessed penalties for failure to file excise tax returns, failure to pay the tax, and failure to make quarterly tax deposits; and was assessed interest.

On September 13, 1979, plaintiff paid $670.59 with respect to these assessments, representing the excise tax assessed for the third quarter of 1972. On this same date, plaintiff filed a timely claim for refund of this payment.

On May 27, 1980, plaintiff timely filed the instant suit seeking refund of the payment of $670.59. In its answer to the plaintiff's petition, the Government has asserted a counterclaim for the unpaid balance of these assessments, plus interest allowed by law, in the amount of $23,014.54, for the third quarter of 1972 through the fourth quarter of 1974.

On September 1, 1982, defendant filed a Motion for Summary Judgment, to which plaintiff has responded (also construed as a cross-motion). Defendant filed its response and reply on November 1, 1982, and plaintiff's reply (which contains the most articulate expression, to date, of plaintiff's contentions) was furnished to the court on December 3 and filed by Order of December 6, 1982.

## DISCUSSION

Plaintiff leased his fuel facility on July 1, 1972. Earlier, on June 27, 1972, plaintiff entered into an "Aviation Products Sales Agreement" with Humble Oil and Refining Company (later known as Exxon) to purchase "Enco Aviation Gasoline" for his fuel facility. Subsequently, from July 1972 through December 1974, plaintiff sold aviation gasoline through his fuel facility at the Torrance Municipal Airport.

Plaintiff alleges that, at about the same time, four other fuel pits were on the same airport field: "C and D" (Standard), "Acme Aviation" (Shell), "California Air Power" (Mobil), and "Palos Verdes Aviation" (Humble).

Plaintiff did not maintain, or has not proffered, books and records from which to ascertain the actual total volume or nature of sales of aviation gasoline he made during the period in issue.[1] The Internal Revenue Service examined the "flowage fee" records maintained by the City of Torrance (which, during the period in issue, imposed a $0.3-cents-per-gallon 'flowage fee' on Exxon for fuel it delivered to plaintiff at his fuel facility). These "flowage fee" records (as well as the microfiche customer sales analysis maintained by Exxon) show the following monthly sales of aviation gas by Exxon to plaintiff (in gallons):

|           | 1972   | 1973   | 1974   |
|-----------|--------|--------|--------|
| January   |        | 9,012  | 8,725  |
| February  |        | 8,736  | 18,124 |
| March     |        | 9,046  | 8,838  |
|           |        | 26,794 | 35,687 |
| April     |        | 8,990  | 8,762  |
| May       |        | 16,433 | 17,744 |
| June      |        | 8,751  | 8,762  |
|           |        | 34,174 | 35,268 |
| July      | 8,912  | 26,063 | 17,391 |
| August    | 9,315  | 24,642 | 17,499 |
| September | 4,126  | 8,694  | 17,333 |
|           | 22,353 | 59,399 | 52,223 |
| October   | 8,940  | 25,208 | 8,638  |
| November  | 8,894  | 26,294 | 8,596  |
| December  | 18,404 | 13,766 | 8,703  |
|           | 36,238 | 65,268 | 25,937 |

Based on these monthly gallonage figures, plaintiff was assessed the $0.3-cents-per-gallon retailers' excise tax imposed by 26 U.S.C. § 4041(c)(2) and (3) as follows:

|                | 1972     | 1973       | 1974       |
|----------------|----------|------------|------------|
| First quarter  |          | $ 803.82   | $1,070.61  |
| Second quarter |          | 1,025.22   | 1,058.04   |
| Third quarter  | $ 670.59 | 1,781.97   | 1,566.69   |
| Fourth quarter | 1,087.14 | 1,958.04   | 778.00     |
|                | $1,757.73 | $5,569.05 | $4,473.34  |

In addition to this total tax assessment of $11,800.12, defendant also seeks penalties and interest as noted above.

Plaintiff has alleged that he only operated the Exxon station, as a leasee, but that Humble Oil or the City of Torrance was the owner. The Government has alleged only that plaintiff leased the fuel pit, and that he operated the facility and sold the gasoline in issue. For the purposes of this opinion, such factual controversy as to who actually owned the premises is not relevant.

Similarly, plaintiff urges that he, in fact, turned the basic running of the fuel facility over to others for management purposes, and that any errors in remittance of tax, which may have occurred, were not his responsibility, but that of his managers. This, too, is not relevant, here, inasmuch as plaintiff was responsible for his operations and for the activities of those he employed to manage his facility.

Moreover, we note that plaintiff in his reply alleges that he, at all times, acted in good faith and with no intent to defraud the Government and this may be so; the Government does not, here, contend otherwise. Rather, plaintiff is merely assessed, here, the outstanding taxes allegedly due and penalties for failing to pay such taxes when and as due.

Plaintiff further alleges that he requested and received from the Internal Revenue Service a permit, i.e., "637A", for tax-free sales to "commercial operators only." This fact is not denied by the Government but,

---

1. In a response to a Government motion for production of documents, plaintiff has indicated that all the 'paper work' which he had maintained was lost in a flood in Palm Springs in July 1979.

again, as indicated in the decision below, is not relevant to or dispositive of the issue presented here: namely, whether plaintiff, in fact, sold gasoline to commercial operators and, if so, to what extent (or, stated conversely, to what extent plaintiff sold gasoline to noncommercial operators, which sales would not be subject to the permit).

Likewise, plaintiff again states in his reply that he inquired of the IRS about the $0.3-cents-per-gallon retailers' excise tax and was advised that it applied to noncommercial aircraft. The IRS representative explained the definition of 'commercial aircraft' as aircraft for hire, and informed plaintiff that a permit was required for a seller to sell fuel without charging this tax. As plaintiff alleges, he then applied for and received such permit, which he posted in his facility. Again, however, this does not resolve the question as to whether plaintiff, in fact, sold fuel to such qualifying 'commercial aircraft' within the meaning of the statute.

A determination as to whether plaintiff's sales were, in fact and in law, exempt from the retailers' excise tax is dependent on the several factors summarized below.[2]

In both his response and his reply, and, indeed, throughout these proceedings, plaintiff alleges that the sales it conducted were to such commercial operators as the following:

"City of Los Angeles
Los Angeles County Fire
Rolling Hills Aviation
Prince Lincoln Mercury
Aviation Accident Prevention
Car Phones Inc.
Drews Construction Co.
Coast Elevator Co.
White & Day
Advance Bearing Co.
Dunn & Associates Inc.
Western Interprises
Aero Sheet Metal
Bonanza Airlines Co.
Los Angeles P.D.
Southwest Skyways
Edelbrock
Prince Chrysler Plymouth
Peninsula Aviation
L.P. Fliers
Tomei Construction Co.
United States Navy
Halton Associates
South Bay Engineering Co.
U.S.A.F. Aero Club
Aviation Upward
Continental Motors"

However, plaintiff is unable to supply more specific information as to the quantities of gasoline sold for such alleged commercial users or the dates of sale. For example, plaintiff has proffered no evidence that those who purchased the fuel were certified as exempt 'commercial' users (as discussed in detail in the decision below). Thus, plaintiff is apparently unable to support, with probative evidence, the contention that the sales are tax-exempt. (*See* 26 U.S.C. § 4041(i); *see also,* Temporary Regulations, Sec. 154.1–1(d)(1).)

Finally, plaintiff in its response to defendant's motion for summary judgment,

---

**2.** The court notes the plaintiff's contentions in his reply that he had spoken with a number of employees of IRS, prior to instituting the instant suit, and that he was informed by such individuals that, given his seller's 637A permit, as noted, he was not liable for the tax in issue. Such representations, however, did not bind the Government and plaintiff was advised that additional considerations within the Service would be required before the matter could be finally resolved. As noted at the outset of the opinion, such further considerations did not resolve the dispute in plaintiff's favor. Even were the court to be sympathetic to a taxpayer's complaint against needlessly complex and inconsistent bureaucratic administration; nonetheless, such matters would not be dispositive of the factual and legal issues presented here.

alleges that he has already paid the excise tax and has submitted exhibits purporting to establish that fact.

These exhibits, however, indicate that the payments to which plaintiff alludes were for such items as (1) the $0.7-cents-per-gallon State of California motor fuel tax and (2) the $0.4-cents-per-gallon *manufacturers'* excise tax (imposed under 26 U.S.C. § 4081), for a subtotal of $0.11 cents per gallon, and (3) the $0.3-cents-per-gallon "flowage fee", assessed by the City of Torrance, for a total of $0.14 cents per gallon.

Plaintiff apparently confuses the $0.4-cents-per-gallon *manufacturers'* excise tax which his supplier, Exxon, included in its sales price to plaintiff, and the $0.3-cents-per-gallon *retailers'* excise tax, which plaintiff was, in turn, to include in his sales price to his customers. The agreements between plaintiff and Exxon, as further appended to plaintiff's reply, indicate that Exxon properly noted its obligation as the manufacturer/seller in its relation with plaintiff/buyer; it was not, however, Exxon's responsibility to collect in its sales price to plaintiff the plaintiff's retailers' excise tax.

Plaintiff has introduced no probative evidence that the federal retailers' excise tax in issue here, was, in fact, paid.

Based on the foregoing, it is concluded that the facts material to the pending motions are not in dispute and such facts are as set forth above.

## DECISION

The Internal Revenue Code of 1954, 26 U.S.C. § 4041(c)(2), imposes an excise tax on the sale of aviation gasoline sold for use as fuel in an aircraft that is being used in "noncommercial aviation" and the amount of the tax is fixed by 26 U.S.C. § 4041(c)(3) as $0.3 cents per gallon.

"Noncommercial aviation" is defined in 26 U.S.C. § 4041(c)(4), as follows:

(4) Definition of noncommercial aviation. —For purposes of this chapter, the term *'noncommercial aviation'* means *any use* of an aircraft, *other than use in a business of transporting persons or property for compensation or hire by air.* The term also includes any use of an aircraft, in a business described in the preceding sentence, which is properly allocable to any transportation exempt from the taxes imposed by sections 4261 and 4271 by reason of section 4281 or 4282. (*Emphasis supplied.*)

■ In short, the statute provides that the 'commercial use' which would *exempt* the transaction from imposition of the excise tax is that use of an aircraft "in the business of transporting persons or property for compensation or hire by air." Thus, the determinative factor for purpose of the Internal Revenue Code is *not* whether the fuel purchaser is a commercial enterprise (as that term may be defined for lay purposes), but, rather, whether the aviation fuel is purchased by a commercial enterprise *engaged in the business of transporting people or property by air for money* (such as, put simply, a commercial airline.) [3]

The preceding paragraph appears to resolve the area of disagreement and misunderstanding between the plaintiff's interpretation and that of the Government, and confirms that the Government's interpretation, in the present context, is the correct one.[4]

■ In the present case, plaintiff has been unable to support a contention that his

---

**3.** Noncommercial aviation as defined by the statute would also include any aircraft use *in* a business of transport by air for hire (such as a commercial airline), which is exempt from such other taxes as passenger or cargo taxes under the other code sections noted. For the purposes of this case, it is not necessary to explore, in detail, the statutory scheme other than to note its basic provisions.

**4.** Plaintiff has, throughout this proceeding, contended that a common or lay use of the term, commercial, should be applied. As indicated in the text, this is a misapplication of the standard rules of statutory construction. Moreover, the legislative history of the statutory provisions

sales of aviation fuel (including data as to the dates, quantities, and purchasers of such sales) were, indeed, for "noncommercial aviation" as that term is used and defined by the statute (which is the sole definition relevant here).

The Government further notes that 26 U.S.C. § 4041(i) provides that if aviation fuel is sold for use in an aircraft, its sale is presumed to be taxable under § 4041(c)(2), *unless* the *purchaser* registers and complies with the Regulations promulgated by the Secretary of the Treasury. As noted above, plaintiff has, likewise, been unable to support a contention that his purchasers were so registered (for example, by noting the registration number of the purchasers who could furnish to a seller a certificate to this effect issued by the District Director of the Internal Revenue). *See* 26 U.S.C. § 4041(i); *see also,* Temporary Regulations in connection with the Airport and Airway Revenue Act of 1970, 26 C.F.R. Sec. 154.1–1.

Accordingly, in the absence of any such support, the statutory presumption of taxability applies.

## CONCLUSION

Based on the foregoing, it is hereby ordered that: the plaintiff's cross-motion for summary judgment (filed September 29, 1982) is DENIED; defendant's motion for summary judgment of September 1, 1982, is GRANTED; judgment is to be entered for defendant on its counterclaim in the amount of $23,014.54, plus any interest allowed by law; and the petition is to be dismissed.

shows that the specific rather than the ordinary meaning of the terms, commercial and noncommercial, was, in fact, intended. This legislative history is set forth fully and sufficiently in defendant's moving brief and need not be restated herein.

Again, plaintiff, in its reply, protests the use by IRS in their statutory and regulatory provisions of convoluted meanings of words, rather than simple, straight-forward definitions and language. Indeed, such protests have been echoed by innumerable taxpayers in this court. And, again, as noted in footnote 1 above, even were the court to be sympathetic to such protests, they have not yet been recognized by the law as a justifiable defense against the assessment to taxes due under the statutes and regulations.