BOCA AIRPORT, INC., d/b/a Boca Aviation, Plaintiff/Counterdefendant,

v.

UNITED STATES of America, Defendant/Counterplaintiff.

No. 90–2353–CIV–DAVIS.

United States District Court, S.D. Florida.

Dec. 14, 1992.

Carl Randolph Coleman, Sherry C. Dickman, P.A., Coral Gables, FL, for Boca Airport, Inc.

A.B. Phillips, U.S. Dept. of Justice, Washington, DC, for U.S.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

EDWARD B. DAVIS, District Judge.

THIS MATTER is before the Court on cross motions for summary judgment. The Plaintiff, Boca Airport, Inc. ("Boca"), is challenging excise taxes for the sale of aviation fuel assessed pursuant to 26 U.S.C. § 4041(c)(1), (c)(2), and (d)(3). At issue is the validity of the Treasury Department's regulation governing an exception to the excise tax, 26 U.S.C. § 4041(i). Although the statute rather than the regulation controls this matter, evidence conflicts as to whether Boca has fulfilled the requirements of the statute, so the Court will deny summary judgment.

## I. BACKGROUND

Boca sells aviation fuel. For each quarter of 1985 and 1986, and the first two quarters of 1987, Boca filed a Form 720 "Quarterly Excise Tax Return." On its returns, Boca did not include as taxable the sale of aviation fuel to the Civil Air Patrol, state agencies, and firms engaged in the commercial charter business.

On or about April 26, 1990, the Internal Revenue Service conducted an audit and found that Boca was liable for an excise tax assessed pursuant to I.R.C. § 4041(c)(1), (c)(2), (d)(3) (1984). The I.R.S. considered Boca liable because it did not register as a tax-free seller by filing a Form 673A "Application for Registration" pursuant to Treas. Reg. § 48.4041–11(a). Boca subsequently filed a Form 673A on May 15, 1987. The I.R.S. notified Boca that for the period ending September 30, 1985, Boca owed $4,492.79 including interest. Boca paid this, and then filed a timely claim for refund, contending that it had no need to register because its purchasers had registered. Such registration, Boca argued, satisfied I.R.C. § 4041(i), upon which the Treasury Regulation had been based. Ultimately the I.R.S. rejected Boca's claim.

Boca brought this action to challenge the denial of a refund. The United States has counterclaimed that Boca owes an additional $168,457.59, excluding interest and statutory charges, for excise taxes due between January 1, 1985 and June 30, 1987. Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56.

## II. DISCUSSION

■ The Court will not grant summary judgment unless the movant demonstrates no genuine dispute exists as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Similarly, the movant may show an absence of evidence in a material issue where its opponents bear the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All reasonable doubts as to the facts are to be resolved in favor of the party opposing summary judgment. *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985).

The issue in this case, which apparently has not been addressed previously in other courts, stems from a discrepancy between the Internal Revenue Code and the Treasury Regulation promulgated from the Code. The Internal Revenue Code provides exceptions for aviation fuel excise taxes. To administer these exceptions, the Code provides for a registration system:

(i) Registration.—If any liquid is sold by any person for use as a fuel in an aircraft, it shall be presumed for purposes of this section that a tax imposed by this section applies to the sale of such liquid *unless the purchaser is registered* in such manner (and furnishes such information in respect of the use of the liquid) as the Secretary shall by regulations provide.

I.R.C. § 4041(i) (emphasis added). The Treasury Regulation that arose from this section states:

Any sale of liquid fuel for delivery into a fuel supply tank of an aircraft is presumed to be subject to tax under section 4041(c), *unless both the seller and the purchaser of the liquid fuel are registered* as provided in paragraph (b) of this section or are within one of [t]he exceptions provided in paragraph (c) of this section.

Treas.Reg. § 48.4041-11(a) (emphasis added). As the highlighted language shows, the statute requires "the purchaser" to register so that tax is not presumed, but the regulation requires "both the seller and the purchaser" to register. Boca claims that the statute rather than the regulation controls, and that because it sold the fuel to registered purchasers, it complied with the statute. The United States contends that the regulation governs the matter, and because Boca was not registered during the relevant period, it owes the excise taxes, regardless of whether the purchasers were registered.

■ The overarching principle in all questions of statutory construction is the intent of the legislature. "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*,

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The court must strike down administrative constructions contrary to clear legislative intent. *Id.* at 843 n. 9, 104 S.Ct. at 2781 n. 9.

■ Beyond considering congressional intent, to evaluate the validity of agency regulations, courts use an analytical scheme that divides the rules into those that are "interpretive" and those that are "legislative." *CWT Farms, Inc. v. Commissioner of Internal Revenue*, 755 F.2d 790, 800 (11th Cir. 1985). A legislative or substantive regulation is issued pursuant to specific authority; such regulations effectively implement the statute and thus have the same effect as a valid statute. *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). The proxy rules of the Securities and Exchange Commission are an example of legislative regulations. *Id.* In contrast, an interpretive regulation stems from general statutory authority, and must be in harmony with the origin and purpose of the statute. *CWT Farms*, 755 F.2d at 801 (quoting *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982)). Deference to interpretive regulations varies on factors including the timing and consistency of the agency's position. *Batterton*, 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9.

■ Section 4041(i) is part of a statutory scheme in which Congress intended to exempt certain purchasers from the payment of the aviation fuel excise tax. It is the result of the Airport and Airway Revenue Act of 1970, Pub.L. No. 91–258, § 202(a), 84 Stat. 219. The purpose of this legislation was to capture revenue from noncommercial aviation:

While the bulk of the user revenues from commercial carriers are to be derived from taxes on passengers and freight, most of the user revenues from general aviation (i.e., noncommercial aviation, or any use of an aircraft other than in a business of "transporting persons or property for compensation or hire by air") will be obtained from taxes on fuel used in aviation—(1) an increased tax on gasoline and (2) a new tax

on other aviation fuel. The fuel tax on general aviation is a measure of its use of the airway system, since general aviation (as described above) will not be subject to the passenger and cargo taxes. It is believed that general aviation should be required to pay a larger share of air user charges than at present, and therefore this title substantially increases the fuel tax applicable to noncommercial aircraft use.

H.Rep. No. 601, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 3047, 3084–85. Commercial aviation would continue to be "subject to passenger and cargo taxes in lieu of the fuel tax." *Id.* at 3087. This presented a problem, however, because "[s]pecial fuels are taxed at the retailer level." *Id.* Thus, to prevent the double taxation of commercial aviators, Congress created section 4041(i). "Registration procedures are authorized in this title, so that airlines and others in commercial aviation will be able to purchase aviation fuel free of the retailers' taxes." *Id.*

The House report issued contemporaneously with the statute thus indicates that section 4041(i) was a mechanism intended to facilitate the excise-tax exemption of commercial carriers and other applicable purchasers. The onus for collection would be on the retailer, which would charge the tax "at the pump." However, the responsibility for registration would be on the purchaser, which would ultimately enjoy the reduced-cost fuel. Under the scheme, the seller should presume the tax applies unless the purchaser provides proof of such registration. Considering the unusual area it covers, the statute explains this design with considerable clarity.

■ In light of the congressional intent behind I.R.C. § 4041(i), the regulatory requirement that the seller register reflects an unreasonable interpretation of the statute. Under the Defendant's position, the seller must pay excise taxes for fuel sold for use in commercial aircraft, regardless of whether the commercial purchaser has registered, so long as the seller has failed to register. The effect of this interpretation is wrongfully to tax either the seller or the purchaser for fuel used in flights in which the government has already collected its revenue by taxing cargo or passenger ticketing.

Furthermore, the additional burden that the Treasury Regulation demands does not rationally support the policy the Defendant claims. The Defendant contends that requiring the seller to register eases its administrative burden "for information and enforcement purposes." (Def.'s Mem. Opp'n at 9.) However, Defendant does not explain how the marginal additional information it exacts from the seller meets these purposes. In harmony with the statute, another Treasury Regulation details the seller's requirements for obtaining certificates from purchasers. *See* Treas.Reg. § 48.4041–11(d). Ultimately the mechanism that triggers taxability is noncommercial *use*, and the end-purchaser exclusively controls the use of the fuel. Considering the seller's reporting requirements through the Quarterly Excise Tax Returns, its requirement for obtaining the purchasers certificates under Treas.Reg. § 48.4041–11(d), and its inability to define the ultimate use of the fuel, requiring the seller to register serves no reasonable end.

In addition, other commonplace theories of statutory construction contradict the Treasury's interpretation. Under the plain language of the statute, the Treasury has authority to regulate the registration of *purchasers*, not sellers. The legislature's designation of one class—purchasers—presumptively excludes other classes, such as sellers. Had Congress intended to include sellers, it easily could have.

Finally, no reason exists to defer to the agency by characterizing the statute as "legislative" rather than "interpretive." Although the statute confers authority specifically, plainly it does not authorize substantive regulation to the extent the Defendant contends. Congress intended for the Treasury merely to administer the program within the narrow confines the legislation delineates. First, section 4041(i) states that taxability is "presumed" absent registration. If the word is to have any meaning, registration applies to a presumption rather than an absolute condition. Second, the statute directs that the presumption does not apply where "the purchaser" is registered as the Treasury

would prescribe. Thus, in section 4041(i), Congress conferred authority to the Treasury only in regulating the purchaser's registration, and only to avoid the presumption of taxability. Beyond this field, the agency's interpretation deserves the diminished deference of an interpretation rather than legislation.

Due to the conflict between the Treasury's interpretation of the statute and congressional intent, section 4041(i) rather than Treas. Reg. 48.4041–11(a) controls this proceeding. To the extent Boca can prove its purchasers were duly registered under the regulations, its sale of aviation fuel will not be taxable. To the extent Boca cannot prove this, the Court will presume that the tax applies. *See Blue v. United States*, 2 Cl.Ct. 38, 40–41 (1982) (finding the statutory presumption of taxability applied under § 4041(i) where the taxpayer failed to support his claim that purchasers were registered). However, Boca can rebut this presumption by proving through other means that the sales were exempt.

█ To prove that its purchasers were registered, Boca relies exclusively on the affidavit of Karl M. Sachs, C.P.A. Mr. Sachs declares that "[t]he fact that all sales resulting in the tax assessment were made to registered purchasers was not disputed by the Internal Revenue Service." (Sachs Aff. ¶ 5.) Attached to the affidavit is an exhibit purportedly excerpted from the I.R.S. Agent Report, which states: "The taxpayer did not have a valid Form 637 registration for tax free transactions at the time the fuel was sold or used, although the relevant purchasers had properly registered." (*Id.* Ex. A.)

Contrary evidence exists, however. Defendant has supplied the Declaration of Lawrence Semmel, the I.R.S. Revenue Agent who performed the audit on Boca. Mr. Semmel claims that he did not consider the purchasers' registration during the audit. (Semmel Decl. ¶ 4.) He also contends that the excerpt from the Sachs affidavit was prepared during the administrative appeal of the case, not during the audit. (*Id.* ¶ 5.) In light of the conflicting evidence in this matter, the Court cannot rule in summary judgment. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is DENIED, and that Defendant's Motion for Summary Judgment is DENIED.

DONE AND ORDERED.