**BOCA AIRPORT, INC., d/b/a Boca Aviation, Plaintiff/Counterdefendant,**

v.

**UNITED STATES of America, Defendant/Counterplaintiff.**

**No. 90–2353–CIV.**

United States District Court, S.D. Florida.

May 24, 1993.

Jan Neiman, Lamont Neiman Feuerman, Miami, FL, for plaintiff/counterdefendant.

A.B. Phillips, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant/counterplaintiff.

## *MEMORANDUM OPINION AND ORDER*

EDWARD B. DAVIS, District Judge.

The Plaintiff, Boca Airport, Inc. ("Boca"), a seller of aviation fuel, is challenging excise taxes assessed pursuant to 26 U.S.C. § 4041(c)(1), (c)(2), and (d)(3). The United States has counterclaimed that Boca owes an additional $168,457.59, excluding interest and statutory charges, for excise taxes due between January 1, 1985 and June 30, 1987.

On December 14, 1992, the Court denied the parties' cross motions for summary judgment. *Boca Airport, Inc. v. United States,* 93–1 U.S.Tax Cas. (CCH) ¶ 70,024, at 45,031 (S.D.Fla. Dec. 14, 1992). The Court examined the validity of Treasury Regulation § 48.4041–11(a), which requires both purchaser and seller to register to enjoy the excise tax exemption for commercial purchasers. This Treasury Regulation is based on 26 U.S.C. § 4041(i), which only requires the purchaser to register. The Court held that as a matter of law, I.R.C. § 4041(i) controls the commercial purchaser exemption, and that the Treasury Regulation's additional requirement of seller registration is invalid.

On May 3, 1993, the Court held a trial on the matter. Based upon that trial and the documentary evidence and memoranda supplied by the parties, the Court enters these Findings of Fact and Conclusions of Law in accordance with Fed.R.Civ.P. 52(a).

## I. FINDINGS OF FACT

Boca is a Florida corporation that operates the Boca Raton Municipal Airport in Boca Raton, Florida. For each quarter of 1985 and 1986, and the first two quarters of 1987, Boca filed a Form 720 "Quarterly Excise Tax Return." On its returns, Boca did not include as taxable the sale of aviation fuel to the Civil Air Patrol, state agencies, and firms engaged in the commercial charter business.

On or about April 26, 1990, the Internal Revenue Service conducted an audit and found that Boca was liable for an excise tax assessed pursuant to I.R.C. §. 4041(c)(1), (c)(2), (d)(3) (1984). The I.R.S. considered Boca liable because it did not register as a tax-free seller by filing a Form 673A "Application for Registration" pursuant to Treasury Regulation § 48.4041–11(a). Boca subsequently filed a Form 673A on May 15, 1987. The I.R.S. notified Boca that for the period ending September 30, 1985, Boca owed $4,492.79 including interest. Boca paid this, and then filed a timely claim for refund, which the I.R.S. rejected. Subsequently, Boca brought this suit.

At trial, Boca produced evidence of its procedures in selling aircraft fuel. Boca's president, Mark Wantshouse, was vice president and general manager and oversaw the business at the time of the sales in question. He testified that Boca's employees would collect excise taxes unless the pilot told them the tax would not apply and supplied a tax exemption identification number. The employee would then write the number on either the sales invoice or the credit card receipt.

On cross examination, Mr. Wantshouse said that the employees did not ask if there was a tax exempt purpose to the flight. Another Boca employee, Karen Pearl, also testified that she did not ask whether there was a tax exempt purpose to the flight. Instead, she only asked whether the flight was a charter. She did not know any other tax-exempt purpose beyond a charter flight, and

she assumed that all fuel sales for charter flights would be tax exempt.

Boca also produced sales invoices for each tax period. Some of the invoices had the purchaser's purported tax exemption identification number written on them; most did not. Boca did not keep its credit card receipts, which held its other records of tax registration numbers. As the parties apparently agree, none of the documents met the substantiation requirements of the Treasury Regulation 48.4041–11(d).

## II. CONCLUSIONS OF LAW

Generally, fuel excise taxes apply only to noncommercial aviation, and commercial aviation is taxed by other means, such as passenger and cargo taxes. *See* I.R.C. § 4041(c); *Boca Airport*, 93–1 U.S.Tax Cas. (CCH) ¶ 70,024, at 45,030. The Internal Revenue Code provides a scheme in which the excise tax presumptively applies unless the purchaser is registered according to Treasury Regulations:

> (i) Registration.—If any liquid is sold by any person for use as a fuel in an aircraft, it shall be presumed for purposes of this section that a tax imposed by this section applies to the sale of such liquid unless the purchaser is registered in such manner (and furnishes such information in respect of the use of the liquid) as the Secretary shall by regulations provide.

I.R.C. § 4041(i).

The only remaining legal issue is whether the requirements of Treasury Regulation § 48.4041–11(d) must be met to substantiate a claim for tax exemption. It is the Government's position that the seller must strictly comply with the Treasury Regulation to enjoy the exemption. However, Boca contends that it should be able to prove tax exemption by producing copies of actual sales invoices with the purchasers' tax-exempt identification number, as well as other evidence tending to show that it sold fuel for tax-exempt uses.

Treasury Regulation 48,4041–11(d) defines the evidence required to establish a tax-free sale under I.R.C. § 4041(i). It states in part:

> (d) Evidence of tax-free sale.
>
> (1) To establish the right of a purchaser to purchase fuel delivered into the fuel supply tank of an aircraft tax free, the seller must obtain from the purchaser and retain in its possession a certificate, properly executed and signed by or on behalf of the purchaser, containing the following information:
>
> (i) Date of purchase,
>
> (ii) The purchaser's registration number (or the exception from registration which is relied upon), and
>
> (iii) A brief statement of the intended tax-free use of the fuel (for example, by an airline in the business of transporting persons or property for hire).

Treas.Reg. § 48.4041–11(d)(1) (1986). The regulation goes on to describe the form of a proper registration certificate. *See id.* subsec. 2. It also requires the seller "to use reasonable diligence to satisfy itself that a tax-free sale of fuel to the purchaser is allowed by law." *Id.* subsec. 5.

The Government argues that this regulation is reasonable and proper under the congressional mandate. The Court agrees. In its prior Order, the Court noted that "[i]n harmony with the statute, [Treas.Reg. § 48.-4041–11(d) ] details the seller's requirements for obtaining certificates from purchasers." *Boca Airport*, 93–1 U.S. Tax Cas. (CCH) ¶ 70,024, at 45,031. However, Boca contends that Treasury Regulation only applies to a *presumption*, rather than an irrebuttable conclusion of taxability. As the Court noted previously, section 4041(i) empowers the Treasury to regulate the presumption of taxability only. *Boca Airport*, 93–1 U.S.Tax Cas. (CCH) ¶ 70,024, at 45,031. Boca further argues that it should be able to rebut the presumption of taxability through some means other than that provided by the Treasury through 48.4041–11(d). The Government contends that it cannot. Considering the statute as a whole, the Treasury regulation, and deference the Court must provide the Treasury's interpretation, the Court agrees with the Government.

■ Generally, the Court must defer to the Treasury's interpretation of the Internal Revenue Code. It is true that, where the Code mandates regulation of a particular sphere, and the Treasury construes the Code beyond the area of the mandate, the Treasury's interpretation "deserves the diminished deference of an interpretation rather than legislation." *Boca Airport,* 93–1 U.S.Tax Cas. (CCH) ¶ 70,024, at 45,031. But this deference, though "diminished," is nonetheless considerable. The Secretary of the Treasury has the power to "prescribe all needful rules and regulations" for the enforcement of revenue laws. I.R.C. § 7805(a); *see also id.* § 6001 (requiring persons liable for tax to comply with the Secretary's recordkeeping regulations). Regulations promulgated under this general rulemaking authority must be sustained unless unreasonable and obviously contrary to the statutes themselves. *R.J.R. Nabisco, Inc. v. United States,* 955 F.2d 1457, 1464 (11th Cir.1992); *Faygo Beverages, Inc. v. United States,* 640 F.2d 27, 28 (6th Cir.1981) (upholding a "bright line rule," somewhat broader than the Code, because it eased administration).

■ The Treasury's interpretation is both reasonable and consistent with Congress's excise tax provisions. The reporting requirement of Treasury Regulation 48.4041–11(d) is neat and efficient. It requires only three items of information: the date of purchase, the purchaser's registration number, and a brief statement of the intended tax-free use. This information allows the I.R.S. to verify the use of the aircraft fuel, which defines whether the tax applies.

Unless fuel sellers collect this minimum data, administering the excise tax exemption would be difficult, if not impossible. Congress has chosen to require retailers to collect the excise tax, but allow purchasers to prove their exemption through registration. *Boca Airport,* 93–1 U.S.Tax Cas. (CCH) ¶ 70,024, at 45,030. Under the legislative scheme, purchasers initially substantiate their exemption with the sellers themselves. *Id.* Unless sellers at the point of sale vigilantly police the purchasers' claims of exemption, the government's burden needlessly multiplies. Auditors would have to investigate purchasers' uses of fuel spent long ago.

It is difficult to see how a seller can prove tax exemption without this information. The proof Boca offers—invoices with purchasers' registration numbers—does not explain the use of the fuel for the particular sale at issue, and because the use of the fuel defines whether the exemption applies, tax exemption cannot not be adequately proved. The actual circumstances at Boca prove the point. There is little evidence that Boca's employees asked about the use of the aviation fuel at all. Indeed, Mark Wantshouse, Boca's general manager at the time, testified the employees did not ask whether the fuel was used for a tax-exempt purpose. One of Boca's employees, Karen Pearl, did claim that she asked purchasers about their flights, but she only asked whether they had "charter" flights; she considered a charter flight the only tax-exempt use of aviation fuel. Notably, the sales invoices list at least half-a-dozen "dispatchers" who presumably filled them out and sold the fuel, and Boca did not offer evidence that these other employees asked purchasers whether they would use fuel for charters.

Nevertheless, assume for the moment that all of Boca's employees used the same practice of asking the purchaser whether the fuel would be used for a charter. A charter flight consists of hiring a plane by a specific group of people. *Webster's New Collegiate Dictionary* 186 (1979). However, the excise tax exemption applies to "noncommercial aviation," which consists of "*any* use of an aircraft, other than use in a *business* of transporting persons or property for compensation or hire by air." 26 U.S.C. § 4041(c)(4). This language essentially requires use of the fuel in a commercial enterprise in order to enjoy the exemption. *Blue v. United States,* 2 Cl.Ct. 38, 41 (1982). By this construction, many charter flights will fall into the commercial aviation category, but some may not. Suppose, for example, a person privately owns a plane, but in extraordinary circum-

stances hires the plane out for a charter. The plane is not being used "in a business" of transporting people, but rather for an exceptional charter, and the tax should apply. Several of the purchasers listed among the invoices—Crowe, MacDonald, Barbara E. Armagost, and W. Snell—appear to be individuals rather than business entities. These persons may be proprietors or principals of businesses, or they may not be. Even if they were, Boca's records do not reveal whether the fuel they purchased was consumed exclusively in the "charter" or used for mixed purposes. There is no reason to allow such uncertainty.

In short, Boca's recordkeeping was sloppy. Boca often did not log the purchaser's tax registration number, and never recorded the precise use of the fuel. Neither the tax code nor the courts coddle the careless. *See* I.R.C. § 6001 (requiring taxpayers to keep records as regulations provide); *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623 (1935); *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933) (resting the burden of proof in tax disputes on the taxpayer). Therefore, it is

ORDERED AND ADJUDGED that Judgment shall be entered for the Defendant/Counterplaintiff and against the Plaintiff/Counter-defendant in this matter. Within ten days of the date stamped upon this Order, the Defendant shall submit a proposed form of final judgment in accordance with this Memorandum Opinion and Order.

DONE AND ORDERED.